IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THRULINE MARKETING, INC., )
)
                Plaintiff, )
)
v.                                         )         Case No. 18-2141-JWL
)
DELTA CAREER EDUCATION CORP. )
and GRYPHON INVESTORS, INC., )
)
                Defendants. )
)
_____)

## **MEMORANDUM AND ORDER**

In this case, plaintiff Thruline Marketing, Inc. ("Thruline") asserts claims for breach of contract and unjust enrichment against defendant Delta Career Education Corp. ("Delta"), and Thruline also asserts the same claims against defendant Gryphon Investors, Inc. ("Gryphon"), alleged to be Delta's parent company, on an alter ego basis. The case presently comes before the Court on Gryphon's motion to dismiss for lack of personal jurisdiction and for failure to state a claim (Doc. # 14) and Thruline's motion for a default judgment against Delta (Doc. # 18). As more fully set forth, the Court concludes that it lacks personal jurisdiction over Gryphon, and it therefore **grants** Gryphon's motion to dismiss. Moreover, because Thruline has not established the Court's personal jurisdiction over Delta, the Court **denies** the motion for default judgment.

## I. Background

By its complaint, Thruline alleges as follows: Thruline, a Kansas corporation located in Kansas, provides advertising and marketing services to higher education institutions. In March 2012, Thruline entered into a contract with Edufficient, Inc. ("Edufficient"), under which Thruline provided (and Edufficient paid for) advertising and marketing leads to Edufficient for the benefit of Edufficient's clients. Beginning in March 2017, Thruline began providing leads for the benefit of Delta, who had entered into a contract for services with Edufficient. Delta, a Delaware corporation, provides postsecondary education certificates and diplomas through several colleges, and it maintains multiple campus locations outside of Kansas. Delta failed to pay for some of the services provided by Thruline, and Thruline asserts that Edufficient assigned to it the claims against Delta for payment. By the present action, Thruline asserts claims against Delta for breach of contract and unjust enrichment, seeking at least $256,870 for the unpaid outstanding balance. Thruline also asserts those claims against Gryphon, a California corporation located in California, on the basis of its allegation that Gryphon owns and is the alter ego of Delta.

## II. Personal Jurisdiction Over Gryphon

### A. *No Alter Ego Basis for Jurisdiction*

Gryphon moves to dismiss Thruline's claims against it on the basis of a lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). Gryphon is not located in Kansas, Thruline has not alleged that Gryphon had any contact with Kansas related to this

2

action, and Thruline has confirmed that it asserts personal jurisdiction over Gryphon based solely on its alter ego allegation. *See Mid-Continent Casualty Co. v. Greater Midwest Builders, LTD*, __ F. Supp. 3d __, 2018 WL 839931, at *2 (D. Kan. Feb. 12, 2018) (Lungstrum, J.) ("This Court has consistently ruled that if personal jurisdiction exists with respect to the primary defendant, alter ego allegations may support the exercise of jurisdiction over another defendant."). Gryphon argues that because it is not the alter ego of Delta, the Court cannot exercise personal jurisdiction over it based on Delta's contacts with the forum state.

In its complaint, Thruline alleges that Gryphon recently acquired Delta, which is now a Gryphon subsidiary; that Gryphon used Delta as its alter ego; that Grypon exercised control over Delta, including appropriating Delta's assets without adequate consideration; and that Gryphon operated Delta as an instrument of its own business. In support of its motion, Gryphon has submitted a sworn declaration by an officer stating the following: Gryphon does no business in Kansas and has no assets here; although in May 2006 investment partnerships affiliated with Gryphon purchased an interest in Delta, Gryphon itself does not have an ownership interest in Delta, which has no parent company; that Gryphon and Delta are separate entities, with their own separate boards and officers and employees, and each holds regular meetings and maintains its own corporate formalities; Gryphon and Delta have separate offices, do not share space or equipment, have separate accounts and books and records, and do not commingle assets; and Gryphon does not engage in any commercial transactions with Delta. In response to Gryphon's motion, Thruline has not submitted any evidence to support its alter ego claim; instead it argues

that its allegations are sufficient and that the Court should decline to consider Gryphon's evidence on a summary judgment basis until Thruline has had the opportunity to conduct discovery on the issue. *See* Fed. R. Civ. P. 12(d).

In the face of contrary evidence, however, Thruline may not simply rely on the allegations in its complaint, as "even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit." *See Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). Gryphon has controverted Thruline's alter ego allegations by submitting evidence to show that it is not the alter ego of Delta (and in fact has no ownership interest in Delta). Thruline could have offered its own evidence to support its alter ego allegations, in an attempt to create an issue of fact to be resolved through the litigation, but it has not done so. *See id.* (absent an opposing evidentiary showing by the plaintiff sufficient to create a genuine issue of fact, the defendant's affidavits carry the issue). Thus Thruline may not rely on its alter ego claim to support jurisdiction over Gryphon. Thruline has not identified any other possible basis for such jurisdiction. The Court therefore concludes that it lacks jurisdiction over Gryphon.

In its response to Gryphon's motion, Thruline does request the opportunity to conduct jurisdictional discovery. It does so in the context of Rule 12(d), however, and as noted above, the Court need not invoke that rule to consider Gryphon's evidence on the question of its jurisdiction. Moreover, Thruline has not properly supported its request for discovery. In an affidavit, with respect to Thruline's alter ego basis for personal jurisdiction over Gryphon, Thruline's counsel states that discovery is likely to show "additional details about [Gryphon's] ownership interest in Delta and the level of control

4

it exerted over Delta." Thruline, however, has not provided any basis for a belief that discovery would indeed yield evidence sufficient to controvert Gryphon's evidence and to support jurisdiction over Gryphon. Indeed, in response to Gryphon's motion, Thruline has not even identified the facts that led it to assert the alter ego claim against Gryphon, including any facts relating to Gryphon's ownership of Delta (which Gryphon has disputed by its declaration).[1] Therefore, Thruline essentially requests the opportunity to conduct a fishing expedition in the hope of finding facts to support jurisdiction over Gryphon on an alter ego basis. Because Thruline has not shown a reasonable basis to expect that jurisdictional discovery would yield the necessary facts, the Court exercises its discretion to deny Thruline's request for jurisdictional discovery. *See Custom Cupboards, Inc. v. Cemp SRL*, 2010 WL 1854054, at *5-6 (D. Kan. May 7, 2010) (Lungstrum, J.). Accordingly, the Court dismisses the claims against Gryphon.[2]

### B. *No Underlying Jurisdiction Over Delta*

In addition, and as an alternative basis for dismissal of the claims against Gryphon, the Court concludes that it cannot exercise jurisdiction over Gryphon on an alter ego basis because Thruline has not shown that the Court has jurisdiction over Delta with respect to the underlying claims.

---

[1] See Fed. R. Civ. P. 11(b) (claims and allegations must be warranted by reasonable inquiry).

[2] In light of this ruling, the Court need not address Gryphon's alternative argument that the exercise of jurisdiction over it in this case would be unreasonable. Nor does the Court address whether Thruline's alter ego allegations are sufficient to survive Gryphon's alternative motion under Fed. R. Civ. P. 12(b)(6).

The plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *See OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F. 3d 1086, 1091 (10th Cir. 1998). The allegations in the complaint are taken as true to the extent that they are undisputed by the defendant's affidavits. *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000) (citations omitted).

In *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159 (10th Cir. 2011), the Tenth Circuit reaffirmed the following standards governing this Court's analysis of the issue of personal jurisdiction over a defendant:

> Where a federal lawsuit is based on diversity of citizenship, the court's jurisdiction over a nonresident defendant is determined by the law of the forum state. The party seeking to establish personal jurisdiction over a foreign defendant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment. Kansas's long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process principles. Consequently, this court need not conduct a statutory analysis apart from the due process analysis.
>
> The due process analysis is also two-fold: First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he purposefully availed himself of the protections or benefits of the state's laws and should reasonably anticipate being haled into court there. Although agreements alone are likely to be insufficient to establish minimum contacts, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. The court must examine the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.
>
> If [the defendant] is found to have the requisite minimum contacts with Kansas, then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice. [The defendant] bears the burden

6

> at this stage to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*See id.* at 1166-67 (citations and internal quotations omitted).

> Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state. . . . The purpose of this requirement is to ensure that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or a third person.

*See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citations and internal quotations omitted).

Thruline has not alleged that Delta ever transacted any business in Kansas or that Delta's representatives ever visited the state. Thruline argues that the requisite contacts between Delta and Kansas exist because Thruline (a Kansas resident) provided services for Delta's benefit. Delta did not enter into any contract with Thruline, however; rather, Delta contracted with a party (Edufficient) that contracted with a Kansas resident. Thruline has not alleged that Delta, at the time that it contracted with Edufficient, had any knowledge that a Kansas company would be supplying the contracted-for services. Thruline has alleged that Delta knew of the benefit that Thruline provided, but it has not alleged that Delta knew who was providing that benefit. Thus, on the facts alleged by Thruline, any contact with Kansas is attenuated and occurred solely because of the unilateral activity of Edufficient and Thruline, and as stated in the authority quoted above, such contacts are not sufficient.

Thruline has not cited any authority to suggest otherwise. Thruline cites to a Kansas case discussing the requirements for status as a third-party beneficiary of a contract. *See*

7

*Kincaid v. Dess*, 48 Kan. App. 2d 640, 647-49 (2013). That case only discussed such status in the context of the issue of plaintiff's standing to sue, however, and does not suggest that such status is relevant to a jurisdictional analysis. Moreover, Thruline has not alleged that the Delta-Edufficient contract contained a provision intended to operate for the benefit of Thruline, and thus there is no basis to recognize such status here (even assuming Thruline had authority to suggest the relevance of such status).[3] Thruline also cites a Kansas case that involved "pass through" claims asserted by virtue of a valid assignment of claims. *See Roof-Techs Int'l, Inc. v. State of Kan.*, 30 Kan. App. 2d 1184, 1201-03 (2002). Again, however, that case did not involve the issue of personal jurisdiction, and even though Thruline has alleged that Edufficient assigned claims, it has not established the relevance of any such assignment to the jurisdictional analysis.

In sum, Thruline has not alleged any facts showing that Delta had sufficient contacts with Kansas by which it purposefully availed itself of the benefits of Kansas law, such that Delta could reasonably have expected to be haled into court here. Therefore, Thruline has failed to satisfy its burden to establish the Court's jurisdiction over Delta. Because the Court lacks jurisdiction over Delta, Thruline cannot establish jurisidction over Gryphon on an alter ego basis, and the Court dismisses the claims against Gryphon for that reason as well.

---

[3] In addition, Thruline has not explained why Kansas law would apply in determining its status with respect to the Delta-Edufficient contract, which was presumably executed outside of Kansas.

### III.     **Motion for Default Judgment**

Thruline has moved for a default judgment against Delta, in the liquidated amount of $256,870. Thruline filed a proof of service on Delta, Delta has not responded to the complaint, and on May 10, 2018, the Clerk of Court entered default against Delta pursuant to Fed. R. Civ. P. 55(a). Nevertheless, "judgment by default should not be entered without a determination that the court has jurisdiction over the defendant." *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997). As determined above, Thruline has not met its burden to show that the Court may exercise jurisdiction over Delta. Accordingly, the Court denies the motion for a default judgment at this time.[4]

IT IS THEREFORE ORDERED BY THE COURT THAT defendant Gryphon's motion to dismiss for lack of personal jurisdiction (Doc. # 14) is **granted**, and the claims against that defendant are hereby dismissed.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for a default judgment against defendant Delta is hereby **denied**.

---

[4] Thruline has requested that, if the Court deems its allegations insufficient with respect to jurisdiction over Delta, it be allowed to amend its complaint. The Court therefore grants Thruline leave to amend with respect to the issue of jurisdiction over Delta. If Thruline can allege sufficient facts, it should file its amended complaint on or before July 9, 2018; if it does not file such an amended complaint, the claims against Delta shall be dismissed.

IT IS SO ORDERED.

Dated this 27th day of June, 2018, in Kansas City, Kansas.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge